**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL H. H., JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:23-cv-01265-JSD |
| | ) |
| MICHELLE KING, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Michelle King, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Michael H. H., Jr., ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6). This Court affirms the Commissioner's denial of Plaintiff's application because the decision denying benefits was supported by substantial evidence.

**I.    BACKGROUND**

On June 4, 2021, Plaintiff applied for DIB, alleging that he had been unable to work since March 1, 2021, due to a spinal facture with nerve damage, left shoulder strain, problems with the left knee, high blood pressure, osteoarthritis, patellar chondromalacia, sleep apnea, liver

---

[1] Michelle King became the Acting Commissioner of Social Security in January 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King should be substituted, therefore, for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

problems, and anxiety. (Tr. 14, 246). His application was initially denied. (Tr. 124). On June 28, 2022, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 127). After a hearing, the ALJ issued an unfavorable decision on January 26, 2023. (Tr. 48-67). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on February 10, 2023, but the Appeals Council declined to review the case on August 8, 2023. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.[2]

At his hearing before the ALJ on November 22, 2022, Plaintiff testified to the following: He is able to do basic self-care acts like using the toilet, showering, dressing himself, and feeding himself. (Tr. 36). He receives help from family with cleaning and yardwork. (Tr. 36-37). His most severe issues were pain in his back, legs, and knee. (Tr. 40). He has had back pain since he broke it and it radiates throughout his body. (Tr. 42). At his best, his back pain is a three out of ten but it can go up to an eight or nine. (Tr. 43). He's had multiple knee injuries and surgeries throughout his life and needs his left knee replaced. (Tr. 43). All movements other than standing make his knee pain worse. (Tr. 44). He has shoulder issues and cannot lift his left arm higher than just below shoulder level. (Tr. 45). He has been diagnosed with cirrhosis and it causes constant dull throbbing abdominal pain. (Tr. 45-46). He can only walk for 20-30 minutes at a time. (Tr. 49). He sleeps during the day because he has sleep apnea. (Tr. 49).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

---

[2] On October 2, 2019, an ALJ issued an unfavorable decision finding that Plaintiff is limited to sedentary work. (Tr. 63) The Appeals Council remanded the decision because an ALJ issued another unfavorable decision on February 17, 2021, finding that Plaintiff is limited to light work. (Tr. 81) Plaintiff did not appeal but filed a new application, at issue herein.

2

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). *Accord Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R.

3

§§ 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to

establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2).

## II.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2021, the application date; that Plaintiff had the severe impairment(s) of degenerative disc disease of the spine, status-post thoracic compression fracture, a partial supraspinatus tendon tear of the left shoulder, degenerative joint disease of the left knee and left foot, obesity and obstructive sleep apnea; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 16-17). The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:

> [H]e should never be required to climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally reach overhead with his left upper extremity. He can frequently operate foot controls with his left foot. He can occasionally stoop, kneel, crouch and crawl. He can tolerate no more than occasional exposure to extreme cold and vibration. In addition, the claimant should avoid all exposure to unprotected heights and hazardous machinery.

(Tr. 18). The ALJ further concluded that, although claimant is unable to perform his past relevant work, jobs exist in significant numbers in the national economy that he can perform. (Tr. 25).

## IV.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ failed to properly evaluate opinion evidence, and (2) the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints.

5

### A.  The ALJ Properly Evaluated Opinion Evidence.

In his 2019 opinion, Dr. Huang stated that Plaintiff could only sit, stand, or walk for less an two hours a day, would need period of walking during an 8-hour work day, and a job that permitted shifting positions at will from sitting, standing, or walking. (Tr. 305). Dr. Huang opined that Plaintiff would need to take unscheduled breaks every 30 minutes for an average duration of 10 minutes before returning to work. *Id.* Dr. Huang also said that Plaintiff's legs should be elevated with prolonged sitting, he could never lift 20 lbs. or 50 lbs, and only occasionally lift 10 lbs. Dr. Huang further opined that he could never crouch or climb latters, twist and stoop/bend less than occasionally, and climb stairs only occasionally. *Id.* Dr. Huang then stated that Plaintiff was in constant pain, suffered from cognitive deficits, anxiety, memory loss, and would be moderately limited in his ability to deal with work stress. (Tr. 306). Finally, Dr. Huang said that Plaintiff would be off task for more than 20% of an 8 hour work day and would require redirection 1 to 2 times per hour. *Id.*

Dr. Huang's 2021 opinion is largely similar to his 2019 opinion. However, Dr. Huang stated that Plaintiff would need to take an unscheduled break every hour for approximately 15 minutes before returning to work. (Tr. 307). Dr. Huang's 2021 opinion also does not state that Plaintiff had memory loss, in contrast to his 2019 opinion. (Tr. 306, 308).

The ALJ found Dr. Huang's opinion to be "wholly unpersuasive." (Tr. 23-24). The ALJ found that the evidence in the record did not support Dr. Huang's assertions that Plaintiff "can sit for less than two hours, that he suffers from significant memory loss, that he would require breaks every ten minutes or that he would miss work more than three days per month." (Tr. 23). She further stated that Dr. Huang's conclusions were inconsistent with consultative examiner,

6

Thoms J. Spencer, Psy.D., which supported a finding that Plaintiff is capable of a restricted range of light-duty work activity. *Id.*

Plaintiff argues that the ALJ failed to properly analyze Dr. Huang's opinion, specifically asserting that (1) the ALJ erred by evaluating Dr. Huang's 2019 opinion rather than his 2021 opinion and (2) that the ALJ failed to explain how the opinion of Thomas Spencer, PhD, a consultative psychologist, is inconsistent with Dr. Huang's opinion. (ECF No. 19 at 7). This Court disagrees and finds that the ALJ properly evaluated Dr. Huang's medical opinion.

For social security claims filed after March 17, 2017, the ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to evaluate the persuasiveness of a medical opinion or prior administrative medical finding ("PAMF") by considering:

> (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.

*Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *4 (E.D. Mo. Aug. 8, 2022) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the "most important factors" and must be explained by the ALJ. *Hirner*, 2022 WL 3153720, at *4; *see also* 20 C.F.R. § 404.1520c(b)(2). However, the ALJ is not required to use the precise words "supportability" and "consistency" in their analysis. *See Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (holding that when the ALJ's decision that a physician was unpersuasive was supported by substantial evidence, semantics arguments did not justify reversal); *see also Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (same). When analyzing an ALJ's analysis of medical opinions or PAMFs, a court may look to the entirety of

7

the decision to evaluate consistency and supportability. *See Trosper v. Saul*, No. 1:20-CV-51-DDN, 2021 WL 1857124, at *6 (E.D. Mo. May 10, 2021) ("When the decision is read in its entirety, instead of only the single paragraph addressing [the nurse's] opinion read in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion. In sum, [the nurse's] opinion is not supported by objective evidence or consistent with the remainder of the record.").

This Court finds that the ALJ properly evaluated both the supportability and consistency of Dr. Huang's opinion. First, as to supportability, the ALJ stated that there was no evidence in the record that supports Dr. Huang's statements that Plaintiff can sit for less than two hours, that he suffers from significant memory loss, would require breaks every ten minutes, or that he would miss more than three days of work per month. Second, the ALJ also stated that Dr. Huang's opinion was inconsistent with observations of Dr. Spencer in February 2022, who noted that Plaintiff "ambulated without assistance and with no obvious difficulty."(Tr. 24). Despite Plaintiff's arguments to the contrary, Dr. Spencer's observation is not consistent with the level of limitation Dr. Huang stated was necessary. As such, the ALJ properly evaluated both the consistency and supportability of Dr. Huang's decision.

Furthermore, while Plaintiff takes issue with the ALJ's reference to Dr. Huang's 2019 opinion, rather than his 2021 opinion, the ALJ is not required evaluate "each medical opinion or prior administrative medical finding from one medical source individually." *See* 20 C.F.R. § 404.1520c(b)(1). Moreover, the differences between the 2019 and 2021 opinions would not change the ALJ's analysis. Indeed, the ALJ stated that Plaintiff's memory loss was not supported, nor did the ALJ find any significant break requirement to be persuasive. (Tr. 24). Plaintiff may not agree with this outcome, but this Court cannot overturn the ALJ's decision

8

simply because Plaintiff believes the ALJ should have reached a different conclusion. *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). Therefore, this Court finds that the ALJ properly evaluated Dr. Huang's medical opinion.

### B. Subjective Symptoms

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

9

(8th Cir. 2006)). "If, after reviewing the record, the [C]ourt finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Plaintiff's second argument is that the ALJ's credibility assessment of Plaintiff's subjective complaints is not supported by substantial evidence. This Court disagrees, finding that the ALJ properly discounted Plaintiff's subjective complaints of pain after considering the consistency of those symptoms with the other evidence on the record.

"In analyzing a claimant's subjective complaints of pain, an ALJ must examine several factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." The ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) "The ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole . . . but he must give reasons for discrediting the claimant." *Strongson*, 361 F.3d at 1072 (internal citations and quotations omitted). "If an ALJ explicitly discredits the claimant's

10

testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

After reviewing the record, this Court finds that the ALJ properly evaluated Plaintiff's subjective complaints, analyzing multiple factors and providing her reasoning for doing so. (Tr. 19-23). As a preliminary matter, this Court notes that the ALJ did not entirely discredit Plaintiff's complaints of pain and, as a result, limited him to light work with multiple limitations. (Tr. 18). Furthermore, the ALJ reasonably found that the observations of Plaintiff's medical providers were inconsistent with his complaints of debilitating pain and mental impairments. The ALJ noted that Plaintiff reported injuring his back and left shoulder after a fall in 2017 (Tr. 19), but also emphasized that approximately two months before filing for disability, Plaintiff reported experiencing a benefit from chiropractic treatment. (Tr. 19, 351). Moreover, around the time Plaintiff filed for disability, on May 11, 2021, Plaintiff had a routine visit with his primary care provider where his primary complaints were suspicious lesions on his hands, a lump on the right side of his neck and issues with his gums, yet raised no complaints of back, knee or shoulder pain. (Tr. 20, 341-42). Treatment notes also state that his physical examination was unremarkable and his mental status was normal. (Tr. 20, 341-42). At another appointment in May of 2021, Plaintiff reported that his physical and mental health had improved since quitting alcohol. (Tr. 20, 338).

In November of 2021, Plaintiff complained of back pain to a treatment provider. (Tr. 21, 644-45). However, at that appointment, Plaintiff's EMG testing was negative for pain, his straight leg-raising test was negative, he did not use a cane or a walker, his gait was normal, he could tandem walk, walk on his toes and heels, rise from a partial squat. (Tr. 21, 644-645). At that time he also demonstrated 5/5 muscle strength in his lower body, symmetric reflexes, and

11

intact sensation on his right left. (Tr. 21, 645-46, 651-52). The ALJ also observed that, at this appointment, Plaintiff's spinal imaging remained unchanged. (Tr. 21, 653-54). In January of 2022, imaging of his knee showed postsurgical change consistent with ACL reconstruction. (Tr. 21, 669).

The ALJ also observed that, in January of 2022, a consultative examination of Plaintiff by Ann Ornitz, NP, he was fully oriented and alter, his gait was steady and symmetric, he did not use an assistance device, and had good hand eye coordination. (Tr. 22, 675-676). Ms. Ornitz also noted that while Plaintiff had 4/5 strength in his left deltoid muscles and limited range of motion in his left shoulder and hips, he had 5/5 muscle strength in his upper and lower extremities. (Tr. 22, 675-676). Plaintiff's tandem walking was normal, he could hop on his foot, his pinch and grip strength were normal, and he had no deficits in manual dexterity. (Tr. 22, 676-77). However, Plaintiff's straight leg-raising test was decreased to 45 degrees. (Tr. 22, 677). Thus, the objective medical evidence on the record does not support the degree of pain described by Plaintiff.

As discussed above, the ALJ also examined the psychological consultative examination of Dr. Thomas Spencer, Psy.D. Dr. Spencer observed that while Plaintiff was mildly anxious and appeared to be in "mild to moderate physical distress," and shifted in his seat, he was able to ambulate "without assistance and with no obvious difficulty." (Tr. 24, 683). The ALJ also found that Plaintiff had multiple normal mental status examinations during the relevant time period and had been able to manage his anxiety, even when off of medication. (Tr. 21, 315, 318-19, 331, 335-36, 339-40, 496-97, 618). Based upon the foregoing evidence, the ALJ properly concluded that the objective medical evidence in the record did not support Plaintiff's allegations of

physical and mental disability. *See Hoskin v. Saul*, No. 4:19-CV-00433-SPM, 2020 WL 870985, at *5 (E.D. Mo. Feb. 21, 2020)

Finally, the ALJ reasonably considered Plaintiff's daily activities and found them to be inconsistent with his claims of disabling pain and mental impairment. The ALJ noted that Plaintiff cared for two children and three dogs, could drive, and was able to go out alone and get where he needed to go. (Tr. 22-23, 272-273). Although Plaintiff was struggling to bend and stretch, he "cited no significant difficulty tending to his own person grooming," required no reminders to take medication, and prepared meals once or twice weekly. (Tr. 22, 273). The ALJ also noted that Plaintiff denied difficulty handling finances, getting along with authority figures, or following spoken instructions. (Tr. 22-23, 273). This Court finds the evidence cited by the ALJ provides substantial evidence that his condition during the relevant period was not disabling. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (The claimant's ability to prepare two-course meals, read, play internet games, leave her apartment several times a week, visit family and friends a few times each year, and have dinner at a friend's house once or twice a month showed that the claimant was "capable of completing simple tasks, leaving her home, and interacting with others on at least a superficial level."); *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (claimant's admission that she could perform light housework, wash dishes, cook for her family, do laundry, handle money/bills, shop, watch TV, drive a vehicle, leave his home alone, regularly attend church, and visit her family "undermine[d] her assertion of total disability").

Plaintiff takes particular issue with how the ALJ characterized how his children help out around the house. (ECF No. 19, at 15). However, the consistency of "a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *See Igo v. Colvin*, 839 F.3d 724,

731 (8th Cir. 2016. As such, this Court must defer to the ALJ's evaluation of Plaintiff's subjective symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)). Furthermore, Plaintiff's argument that the ALJ use of "boilerplate language" fails to meet the requirement of an "express credibility determination" is also without merit. (ECF No. 19 at 13). As discussed above, the ALJ properly considered Plaintiff's subjective complaints of pain. The language used in one sentence of the ALJ's opinion does not negate the sound reasoning of the ALJ. Therefore, this Court finds that the ALJ properly evaluated Plaintiff's subjective complaints of pain and the decision is supported by substantial evidence.

### VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Michelle King, Acting Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

 

**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 31st day of January, 2025.